UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN GREENBURGER,

                Plaintiff,

        - against -

PHILIP R. ROUNDTREE, New York State
Corrections Officer, in his individual
capacity,

                Defendant.

**ORDER**

17 Civ. 3295 (PGG) (SLC)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Morgan Greenburger brings this Section 1983 action against Defendant Philip Roundtree, a former Corrections Officer at the Sing Sing Correctional Facility where Greenburger was detained in 2016. (Cmplt. (Dkt. No. 1)) This Court entered an Order of Default against Roundtree (Dkt. No. 23) and referred this case to the assigned Magistrate Judge for an inquest on damages. (Dkt. No. 22) Magistrate Judge Sarah Cave has issued a Report and Recommendation ("R&R") in which she recommends that Greenburger be awarded $118,000 in compensatory damages, $85,000 in punitive damages, $67,420 in attorneys' fees, and $2,826.88 in costs for a total award of $273,246.88. (R&R (Dkt. No. 39) at 1-2) For the reasons set forth below, the R&R will be adopted in its entirety.

## BACKGROUND

### I. FACTS[1]

        On May 11, 2016, staff at Sing Sing placed Greenburger on "special watch" after

---

[1] The parties have not objected to Judge Cave's recitation of the alleged facts. Accordingly, the Court adopts her account of the facts in full. See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not

he reported that he had eaten a toothbrush. (Cmplt. (Dkt. No. 1) ¶ 11; Pltf. Decl. (Dkt. No. 32-2) ¶¶ 4–5) Inmates on "special watch" are monitored by a corrections officer at all times. (Cmplt. (Dkt. No. 1) ¶ 12; Pltf. Decl. (Dkt. No. 32-2) ¶ 5) The toilet in Greenburger's cell was covered to prevent him from hurting himself. When Greenburger asked to use a urine bottle, Defendant Roundtree told him to wait "a few minutes." (Cmplt. (Dkt. No. 1) ¶ 13; Pltf. Decl. (Dkt. No. 32-2) ¶¶ 6-7)

Greenburger waited and again asked for a urine bottle, telling Roundtree that it was becoming an emergency. (Cmplt. (Dkt. No. 1) ¶ 15; Pltf. Decl. (Dkt. No. 32-2) ¶¶ 8-9) Roundtree screamed at Greenburger in response, threatening to beat him if he asked again. (Cmplt. (Dkt. No. 1) ¶ 16; Pltf. Decl. (Dkt. No. 32-2) ¶ 10) Greenburger said he wanted to avoid conflict, but "just needed to use the urine bottle." (Cmplt. (Dkt. No. 1) ¶ 17; Pltf. Decl. (Dkt. No. 32-2) ¶ 11) Roundtree opened the door to Greenburger's cell, placed the bottle inside, and told Greenburger to take it. (Cmplt. (Dkt. No. 1) ¶¶ 18-19; Pltf. Decl. (Dkt. No. 32-2) ¶¶ 12, 14) As Greenburger reached for the bottle, Roundtree beat Greenburger on the "head, back, shoulders, and left arm" with so much force that the baton he was using splintered. (Cmplt. (Dkt. No. 1) ¶¶ 20–21; Pltf. Decl. (Dkt. No. 32-2) ¶¶ 15–17; Rankin Decl. (Dkt. No. 32) ¶ 5(a))

After two hours – during which time a towel placed on Greenburger's head became saturated with blood – Greenburger was transported to Mount Vernon Montefiore Hospital, where five staples were necessary to close his head wound. (Cmplt. (Dkt. No. 1) ¶¶ 23-25; Pltf. Decl. (Dkt. No. 32-2) ¶¶ 19-21, 23; Rankin Decl. (Dkt. No. 32) ¶ 3(b)) The

---

objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section. . . ."). Given Roundtree's default, these facts are assumed to be true. Idir v. La Calle TV, LLC, No. 19-CV-6251 (JGK), 2020 WL 4016425, at *2 (S.D.N.Y. July 15, 2020) ("In the event of a defendant's default, the plaintiff's properly pleaded allegations in the complaint, except those related to damages, are accepted as true.").

wound was two inches long and a half-inch deep. (Rankin Decl. (Dkt. No. 32) ¶¶ 3(d), 5(b)) At the hospital, Greenburger reported dizziness and pain at a level of ten out of ten. He was also diagnosed with a shoulder sprain. (Cmplt. (Dkt. No. 1) ¶¶ 24-25; Rankin Decl. (Dkt. No. 32) ¶¶ 3(a), (c)) Once discharged from the hospital, Greenburger was treated in the Sing Sing infirmary from May 11 to May 16, 2016. (Rankin Decl. (Dkt. No. 32) ¶ 4(a); Pltf. Decl. (Dkt. No. 32-2) ¶ 23) In the infirmary, Greenburger was made to sleep on the floor and was under constant watch by guards. (Pltf. Decl. (Dkt. No. 32-2) ¶ 24)

Defendant Roundtree claimed that Greenburger had instigated the altercation by punching him in the neck and head. (Cmplt. (Dkt. No. 1) ¶ 27) Disciplinary charges were brought against Greenburger, and he was placed in the Solitary Housing Unit ("SHU") at Sullivan Correctional Facility from May 16, 2016 to July 5, 2016, a period of 50 days. (Cmplt. (Dkt. No. 1) ¶ 29; Rankin Decl. (Dkt. No. 32) ¶¶ 4(a), 5(e), Ex. 4; Pltf. Decl. (Dkt. No. 32-2) ¶ 27) While in the SHU, Greenburger was kept in his cell 23 hours a day. (Pltf. Decl. (Dkt. No. 32-2) ¶¶ 28(a)-(b)) His cell had no windows, and was open on both sides, precluding any privacy. (Id. ¶¶ 28(c), (f)) He was allowed only two books, paper, and pencils, and did not have access to his commissary account, to a telephone, or to his personal clothing. (Id. ¶¶ 28(h)-(i), 30) He was permitted only one visitor per week. (Id. ¶¶ 28(h)–(l), 30)

After serving fifty days in the SHU, Greenburger was held for thirty-five days in the Residential Mental Health Unit ("RMHU"), where conditions were substantially the same as in the SHU, except that he had access to mental health programs. (Id. ¶ 29)

Greenburger claims that he suffered emotional injuries from his stay in solitary confinement, including flashbacks, weight loss of more than 25 pounds, frustration, and stress. (Rankin Decl. (Dkt. No. 32) ¶¶ 4(e)-(g); Pltf. Decl. (Dkt. No. 32-2) ¶¶ 28(n)-(p)) He further

3

claims that his time in solitary confinement led to two suicide attempts, stunted social skills, and a tendency to self-isolate. (Pltf. Decl. (Dkt. No. 32-2) ¶¶ 34-35)

On October 2, 2016, after he had been released from the SHU, Greenburger was notified that the disciplinary charges against him had been dropped. (Cmplt. (Dkt. No. 1) ¶ 30; Pltf. Decl. (Dkt. No. 32-2) ¶ 33) According to the Complaint, Defendant Roundtree's employment as a correctional officer at Sing Sing was terminated as a result of the May 11, 2016 incident in which he beat Greenburger. (Cmplt. (Dkt. No. 1) ¶ 3)

## II.  PROCEDURAL HISTORY

The Complaint was filed on May 3, 2017, and asserts claims under Section 1983 for Roundtree's violations of Greenburger's Eighth and Fourteenth Amendment Rights. (Cmplt. (Dkt. No. 1)) Roundtree was served on October 30, 2017 (Dkt. No. 14), but he has not responded to the Complaint or otherwise appeared in this action.

On May 15, 2018, at Greenburger's request, the Clerk of Court issued a certificate of default against Roundtree. (Dkt. No. 17) On November 6, 2018, Greenburger moved for a default judgment. (Dkt. No. 20) On November 13, 2018, this Court directed Roundtree to show cause – at a hearing scheduled for December 12, 2018 – why a default judgment should not be entered against him. (Dkt. No. 19)

Defendant was served with the Court's November 13, 2018 order (Dkt. No. 21), but he did not appear at the December 12, 2018 hearing. (Dkt. No. 23) Accordingly, on December 12, 2018, this Court issued an Order of Default against Roundtree (id.) and referred the case to the assigned Magistrate Judge for an inquest on damages. (Dkt. No. 22)

On June 14, 2019, Greenburger submitted proposed findings of fact and conclusions of law and supporting declarations. (Dkt. No. 32) Despite being served with these

materials (Dkt. No. 38), Roundtree did not submit any opposition.

On January 16, 2020, Judge Cave issued a 33-page R&R.  (R&R (Dkt. No. 39)) The R&R notifies the parties that they have 14 days to file any objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  (Id. at 33)  The R&R further states that the "[f]ailure to object within fourteen (14) days will result in a waiver of objections and will preclude appellate review."  (Id. (emphasis omitted))

On January 30, 2020, Greenburger objected to the R&R to the extent that Judge Cave recommends that – for purposes of an attorneys' fee award – the hourly rate of Beldock Levine & Hoffman LLP ("BLH") partner Jonathan Moore be reduced from $700 per hour to $600 per hour.  (Dkt. No. 40, 41)  Although the R&R was mailed and emailed to Roundtree (R&R (Dkt. No. 39) at 32-33), he has not filed any objections.

## DISCUSSION

### I.     LEGAL STANDARD

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to the magistrate judge's recommendations, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

Where no objections are filed to a magistrate judge's R&R – despite clear warning that a failure to file objections will result in a waiver of judicial review – judicial review has been waived.  See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the

consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); see also Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").

## II.   ANALYSIS

Because the only objection submitted by the parties concerns Moore's hourly rate, the parties have otherwise waived their right to review. This Court has nonetheless reviewed the entirety of the R&R for clear error. As discussed below, the Court finds no error – clear or otherwise – in Judge Cave's thorough and well-reasoned analysis of the issues. As to the billing rate issue, having conducted a de novo review, the Court adopts Judge Cave's recommendation that Moore be awarded $600 per hour and overrules Plaintiff's objection.

### A.   Liability

As Judge Cave notes, "Roundtree's default equates to a concession of liability as to the allegations in the complaint, which asserted a claim under 42 U.S.C. § 1983 that Roundtree's conduct violated Greenburger's Eighth and Fourteenth Amendment rights." (R&R (Dkt. No. 39) at 7 (citing Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) ("Without a response from Defendants, this Court must first determine whether the allegations in Plaintiff's complaint are sufficiently pleaded to establish Defendants' liability.")) The R&R notes that "Greenburger asserts two types of injury under Section 1983: (1) that the blows Roundtree inflicted with the baton constituted an excessive use of force; and (2) that Roundtree's false statements led to his unlawful detention in solitary confinement." (Id. at 8)

As to excessive force, "'the primary source of substantive protection is the Eighth Amendment.'" (Id. (quoting Cox v. Malone, 199 F. Supp. 2d 135, 140 (S.D.N.Y. 2002)) To establish an Eighth Amendment violation,

> an inmate must meet both an objective and a subjective requirement. To meet the objective requirement, the alleged violation must be sufficiently serious by objective standards. . . . The objective component is context-specific, turning upon contemporary standards of decency. . . . To meet the subjective requirement, the inmate must show that the prison officials involved had a wanton state of mind when they were engaging in the alleged misconduct.

(Id. (quoting Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999))

Judge Cave found that the Complaint's allegations, taken as true, establish an Eighth Amendment violation, because Greenburger "alleged that Roundtree, without provocation or cause, struck him in the head, back, shoulder, and left arm, resulting in serious injuries, including a head wound two inches long and one-half inch deep." (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 2, 20-22, 28))

As to Greenburger's due process claim based on the time he spent in solitary confinement, Judge Cave found that the viability of this claim hinges on whether Greenburger's allegations "'establish that he possessed a protected liberty interest.'" (Id. at 9 (quoting Cox, 199 F. Supp. 2d at 141)) "'[D]isciplinary confinement does not create a liberty interest triggering due process protection unless the confinement imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (Id. at 10 (quoting Cox, 199 F. Supp. 2d at 142)) Because Greenburger was placed in the SHU solely as a result of "Roundtree's misconduct – the violent assault followed by Roundtree's false statements giving rise to the disciplinary charges" – Judge Cave concludes that Greenburger's detention in solitary confinement constitutes "an atypical and significant hardship." (Id. at 11) Judge Cave goes on to find that Greenburger has stated "a claim for violation of a protected liberty interest for which he

7

is entitled to recover under Section 1983." (Id.)

This Court finds no clear error in Judge Cave's liability findings. Taken as true, the Complaint's allegations establish that Roundtree is liable under Section 1983 for violating Greenburger's rights under the Eighth and Fourteenth Amendments.

### B.   Damages

Greenburger requests $350,000 in compensatory damages, $150,000 in punitive damages, $77,437.50 in attorneys' fees, and $3,479.86 in costs. (Proposed Findings of Fact and Conclusions of Law (Dkt. No. 32-1) at 17; Billing Records (Dkt. No. 37-1) at 11) As discussed below, the R&R recommends that Greenburger be awarded $118,000 in compensatory damages, $85,000 in punitive damages, $67,420 in attorneys' fees, and $2,826.88 in costs. (R&R (Dkt. No. 39) at 1-2)

#### 1.   Compensatory Damages

As Judge Cave notes, "'damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering.'" (R&R (Dkt. No. 39) at 14 (quoting Kerman v. City of New York, 374 F.3d 93, 125 (2d Cir. 2004))) Thus, Judge Cave "separately analyze[d] Greenburger's damages with respect to excessive force and with respect to his time in solitary confinement." (Id.)

As to damages for excessive force, the R&R states that in "Section 1983 actions involving excessive use of force by a [law enforcement] officer, '[s]ubstantial awards are warranted where the damage is significant.'" (Id. (quoting Justin R. ex rel. O'Toole v. Niang, No. 06 Civ. 6228 (BSJ) (RLE), 2010 WL 7891579, at *4 (S.D.N.Y. July 20, 2010) (citing cases awarding more than $100,000 for injuries arising from physical assaults by law enforcement officers))) "'A beating severe enough to leave marks is sufficient proof of a compensable

injury.'" (Id. (quoting Atkins v. New York City, 143 F.3d 100, 104 (2d Cir. 1998))

After reviewing "dozens of Section 1983 cases involving injuries similar to those Greenburger sustained," Judge Cave determined that Greenburger's "requested award of $350,000 in compensatory damages falls outside the range of reasonableness, and that his circumstances more closely resemble those of plaintiffs for whom awards in the range of $75,000 to $120,000 were deemed reasonable." (Id. at 17 (citing e.g. Blissett v. Coughlin, 66 F.3d 531, 536 (2d Cir. 1995) ($75,000 award to inmate whom prison guards struck with baton, punched, and slapped); Poulos v. City of New York, No. 14-CV-3023 (LTS) (BCM), 2018 WL 3750508, at *2, *7 (S.D.N.Y. July 13, 2018), report and recommendation adopted, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018) ($100,000 award where prison guard struck plaintiff in the head, causing a three-inch laceration, permanent scar, reduced vision, intermittent eye twitching, and pain); Hutchinson v. McCabee, 168 F. Supp. 101, 102, 104 (S.D.N.Y. 2001) ($120,000 award for past and future pain and suffering where inmate had sustained "serious injuries to his face, shoulder and neck" and was hospitalized for nine days))  Judge Cave recommends that Greenburger be awarded $100,000 in compensatory damages, noting that his head wound was "deep, requiring five stitches, but appears to have healed, and the only lasting physical pain he describes is to his back." (Id. (citing Pltf. Decl. (Dkt. No. 32-2) ¶ 31)

As to damages for Greenburger's placement in solitary confinement, Judge Cave cites Parker v. City of New York, No. 15 CV 6733 (CLP), 2018 WL 6338775, at *1 (E.D.N.Y. Dec. 4, 2018), a class action in which the court approved a settlement that awarded inmates with serious mental illness $200 for each day spent in solitary confinement and $175 to most others. (R&R (Dkt. No. 39) at 18)  Given Greenburger's history of mental illness, Judge Cave recommends that he be awarded $200 per day, or a total of $18,000, as compensation for his

wrongful solitary confinement.  (Id.)

Seeing no error in Judge Cave's findings, the Court will award Greenburger a total of $118,000 in compensatory damages.

### 2. **Punitive Damages**

As the R&R notes, a "plaintiff may receive punitive damages in a Section 1983 case where he 'demonstrates that the defendant's conduct is . . . motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others,' that is, where he 'has produced evidence of a positive element of conscious wrongdoing or malice.'"  (R&R (Dkt. No. 39) at 18) (quoting De Michele v. City of New York, No. 09 Civ. 9334 (PGG), 2012 WL 4354763, at *22 (S.D.N.Y. Sept. 24, 2012)))  Judge Cave concludes that Greenburger should be awarded punitive damages because, "[a]s a corrections officer engaged in law enforcement, Roundtree's training 'gave him notice as to the gravity of misconduct under color of his official authority.'"  (Id. at 20 (quoting Medina v. Donaldson, No. 10 CIV. 5922 VMS, 2014 WL 1010951, at *16 (E.D.N.Y. Mar. 14, 2014)))  "Without provocation, Roundtree entered Greenburger's cell with the intent to harm him in retaliation for his requests for a urine bottle, struck him with a baton so hard that it 'splintered,' caused a two-inch gash that bled profusely while Roundtree delayed medical treatment, made false statements that Greenburger instigated the attack leading to disciplinary charges that were subsequently vacated, and Greenburger's 90-day detention in solitary confinement."  (Id.)

After reviewing punitive damage awards in comparable cases, however, Judge Cave concludes that the $150,000 in punitive damages Greenburger seeks is excessive.  Unlike in Alla v. Verkay, 979 F. Supp. 2d 349, 378-79 (E.D.N.Y. 2013), where the court awarded $150,000 in punitive damages, this case does "not involve broken bones or surgery" or "long-

term physical damage." (R&R (Dkt. No. 39) at 20) In "making false statements that led to Greenburger's wrongful disciplinary charges and three months in solitary confinement," however, "Roundtree's conduct is somewhat more reprehensible than that of the officer in Poulos, where the court recommended an award of $75,000 in punitive damages." (Id. at 20-21) Accordingly, Judge Cave recommends a punitive damages award of $85,000, finding that such an award would "punish Roundtree and deter others from this abuse of official authority." (Id. at 21)

Finding no error in Judge Cave's analysis, this Court will award Plaintiff $85,000 in punitive damages.

### 3. Attorneys' Fee Award

As the R&R notes, "[a]ttorneys' fees are available . . . to a plaintiff who prevails under Section 1983," and a "'plaintiff who obtain[s] a default judgment is considered a prevailing party.'" (R&R (Dkt. No. 39) at 21 (quoting Dixon v. Agbai, No. 15 Civ. 850 (AT) (AJP), 2016 WL 3702749, at *12 (S.D.N.Y. July 8, 2016), report and recommendation adopted, 2016 WL 5660246 (S.D.N.Y. Sept. 28, 2016)) (citing 42 U.S.C. § 1988(b))) In Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182 (2d Cir. 2008), the Second Circuit "articulated the method for calculating reasonable attorney's fees: a reasonable hourly rate multiplied by a reasonable number of hours extended on the work constitutes the 'presumptively reasonable fee,' also known as the 'lodestar.'" (Id. at 22 (quoting Tatum v. City of New York, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at *3 (S.D.N.Y. Jan. 28, 2010)))

As to the proper hourly rate, Judge Cave found that the requested hourly rates of $500 for BLH partner David Rankin and $425 per hour for BLH partner Luna Droubi were

11

reasonable. (Id. at 27) As to the $175 per hour rate for a BLH paralegal, Judge Cave deemed this rate excessive and reduced it to $150 per hour. (Id.) The Court sees no error – much less clear error – in these findings. See Lewis v. Amer. Sugar Ref., Inc., No. 14-CV-02302 (CRK), 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019) (awarding rates of $500 and $450 for partners and $125 for paralegals while observing that "[c]ourts in this district have approved hourly rates of $250 to $600 for civil rights attorneys with over ten years of experience").

As to the requested hourly rate of $700 for BLH partner Jonathan Moore, Judge Cave notes that Moore "has more than 40 years of experience as a civil rights practitioner, including his role as co-lead counsel in some of the more high-profile civil rights litigations in this District." (R&R (Dkt. No. 39) at 26-27) Here, however, "the defendant has defaulted" and "there were no contested motions or novel legal issues." (Id. at 27) Under these circumstances, Judge Cave found that the $700 per hour billing rate was excessive, and she reduced Moore's hourly rate to $600. (Id. (citing Tatum, 2010 WL 334975, at *5 (noting that hourly rates ranging from $250 to $600 are considered reasonable for experienced civil rights attorneys in this District)))

Plaintiff objects to any reduction in Moore's hourly rate, asserting that Moore charges paying clients $700 per hour, and that he "is one of the most accomplished civil rights litigators in this City, if not the nation." (Pltf. Obj. (Dkt. No. 41) at 2-3) Plaintiff also notes that courts in this District have occasionally approved hourly rates above $600 for experienced civil rights litigators. (Id. at 7 (citing Williams v. Metro-N. R.R. Co., No. 1:17-CV-03847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018), report and recommendation adopted, No. 17 CIV. 3847 (JGK), 2018 WL 3368713 (S.D.N.Y. July 10, 2018) (recommending $800 per hour for lead counsel in an employment action)))

Acknowledging Moore's qualifications, a $700 per hour billing rate is excessive under the circumstances of this case. This is a single-plaintiff, single-defendant Section 1983 action in which the Complaint is seven pages long and in which the defendant defaulted. See, e.g., Perez Garcia v. Hirakegoma Inc., No. 17 CIV. 7608 (SLC), 2020 WL 1130765, at *12 (S.D.N.Y. Mar. 9, 2020) ("[R]eductions are particularly appropriate in this case, from which is absent any novel or complex legal or factual questions and in which the defendant has defaulted."); Xin Long Lin v. New Fresca Tortillas, Inc., No. 18 Civ. 3246 (RJD) (RER), 2019 WL 3716199, at *9 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019) (reducing rates in part because "[t]his action is relatively straightforward, especially because Defendants defaulted"). Plaintiff's objection will therefore be overruled, and the attorneys' fee award will be premised – as to Moore's billings – on a rate of $600 per hour.

As to the number of hours worked, Plaintiff seeks reimbursement for a total of 196.35 hours. (R&R (Dkt. No. 39) at 28) Although the hours billed were generally reasonable, Judge Cave observed that counsel billed for an excessive number of "internal BLH meetings, calls, and emails"; that "several entries . . . appear to be duplicative"; that "travel time" was sometimes "billed at full rates (instead of half rates as indicated elsewhere)"; and that two entries sought reimbursement for "matters that are clerical and typically non-billable." (Id. at 28-29)

As the R&R states, "[t]o bring the hours expended into a reasonable range, '[c]ourts in this District have applied percentage reductions of up to fifty percent.'" (Id. at 29 (quoting Williams, 2018 WL 3370678, at *12)) Judge Cave found that the issues with counsel's time records were "relatively minor," however, and that "the timekeepers' overall billing practices were relatively clear, concise, and appropriate." (Id.) Accordingly, Judge Cave

13

recommends an across-the-board reduction of 10 percent.  (Id. (citing Automobile Club of New York, Inc. v. Dykstra, No. 04 Civ. 2576 (SHS), 2010 WL 3529235, at *3 (S.D.N.Y. Aug. 24, 2010) (applying 10% across-the-board reduction)))  The Court agrees with Judge Cave's recommendation, and will apply a 10 percent reduction to BLH's hours in recognition of the billing issues cited by Judge Cave.

### 4. Costs

Costs are recoverable in a Section 1983 action, but a "plaintiff's request for costs must 'be supported by appropriate documentation.'"  (R&R (Dkt. No. 39) at 30 (quoting Dixon, 2016 WL 3702749, at *19))  Greenburger seeks $3,479.86 in costs, but Judge Cave found that he failed to provide documentation for expenses associated with photocopying, postage, legal research, telephone calls, and medical records.  (Id. at 31)  Based on her review of receipts submitted by Plaintiff, Judge Cave could substantiate only $2,826.88 in costs – $652.98 less than Plaintiff requests.  The Court finds no error in Judge Cave's analysis, and Greenburger will therefore be awarded $2,826.88 in costs.

## CONCLUSION

For the reasons stated above, Judge Cave's R&R is adopted in its entirety. Plaintiff is awarded $118,000 in compensatory damages, $85,000 in punitive damages, $67,420 in attorneys' fees, and $2,826.88 in costs.  The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
       August 16, 2020                         SO ORDERED.

                                               _____
                                               Paul G. Gardephe
                                               United States District Judge

14